## Case No. 14,211.

### The TUBAL CAIN.

[Blatchf. Pr. Cas. 240.] [1]

District Court, S. D. New York. Oct., 1862.

PRIZE—VIOLATION OF BLOCKADE—SPOLIATION OF PAPERS—REFUSAL TO ANSWER—CONTRABAND CARGO.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. Spoliation of papers by the master.

3. Refusal of the master to answer interrogatories as to the destination of the vessel.

4. Part of the cargo contraband of war.

[1] [Reported by Samuel Blatchford, Esq.]

In admiralty.

BETTS, District Judge. This ship is claimed as a British vessel engaged in a lawful trade at the time she was seized. The capture was made by the United States steamer Octorara, July 24, 1862, at sea, in latitude 32°, and longitude 78° 20′, about ninety miles off the coast of South Carolina. A claim and answer was filed August 5, 1862, denying the legality of the capture. On the cause being called for hearing at this term, the United States attorney moved for judgment of condemnation on the pleadings and proofs. The counsel for the claimant appeared in court, and contested the condemnation upon the law and facts presented in the suit. The voyage commenced at Liverpool. By the shipping articles, the vessel was destined to Nassau, thence (if required) to any ports and places in the West Indies, and back to a port of discharge in the United Kingdom, within twelve months. She cleared at Liverpool, April 22, 1862, for St. Johns, New Brunswick. She had on board a miscellaneous cargo, including knapsacks, saltpeter, and cases of rifles, contraband of war. John Smeitherwait, of Liverpool, was her sole owner. Henry Lafone, of the same place, was the shipper of the cargo. That was consigned to the master or order. The master destroyed his private papers when pursued by the Octorara, and just before he was captured, and at Nassau, he destroyed his letters of instructions furnished in England; and he says that some of these papers destroyed might have related to the vessel or cargo. Before the ship left England it was well known that ports of the Southern States were under blockade. This was also publicly known in Nassau. The vessel was consigned to the master, and the cargo was to be delivered to the holder of the bills of lading. The master, on his examination in preparatorio, declined to answer the eleventh and thirty-fourth interrogatories. On the statement to him of the 39th interrogatory by the commissioner, and a demand of him that he should reply to it, he answered: "I have stated all I know or believe, according to the best of my knowledge and belief, regarding the real and true property and destination of the vessel and cargo, except as to the port or place to which the vessel was bound when captured, and which I have declined, and do still decline, to state." This refusal of the witness the prize commissioner reported to the court, and, on motion of the district attorney, the court thereupon peremptorily ordered the witness to be re-examined upon the 39th interrogatory, and to answer the same fully and truthfully. The commissioner subsequently reported to the court that, pursuant to the order of the court, he had re-examined the witness to the 39th interrogatory, and that, after it had been fully and distinctly read to the witness, he said: "I have already stated, in my former examination, all I know or believe in regard to the real and true property of the vessel and cargo. I answer, that I intended to go to Charleston, South Carolina, if I could get there, and if not, then to any place on that coast where I could run my ship in." A passenger on the vessel, Levy, testifies that he was bound to Charleston, and understood, from conversation with the officers and crew, that the vessel was to go there. There was, plainly, a studied exertion in the papers prepared for the voyage to give it a semblance of neutrality and honesty which did not belong to it. There is no necessity for imputing to any of the crew a connivance or complicity with the owners of the vessel or cargo, but the contumacy of the master in giving his evidence, and his ultimate avowal of the culpable purpose of the adventure, together with his suppression of the papers in his possession on the voyage, stamps its hostile character as against the United States, and fixes the confiscable character of all the property seized.

A decree is, accordingly, directed to be entered, condemning the vessel and cargo to forfeiture, because both of them were despatched with the intention of violating, and were arrested whilst attempting to violate, the blockade of Charleston; and, also, because it was a part of such intention to import, for the use of the enemy, into his ports, under blockade by the authority of the United States, articles contraband of war.